IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Maureen G. Lawer, ) | C/A No. 0:16-3739-RMG-PJG |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Nancy A. Berryhill, Acting Commissioner of Social Security,[1] ) | |
| Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Maureen G. Lawer, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and the case remanded.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the named defendant because she became the Acting Commissioner of Social Security on January 23, 2017.

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).

PJG

# ADMINISTRATIVE PROCEEDINGS

In October 2013, Lawer applied for DIB, alleging disability beginning August 28, 2013. Lawer's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on May 27, 2015, at which Lawer appeared and testified, and was represented by Tiana Hennet-Zaebst, Esquire. The ALJ issued a decision on July 14, 2015 finding that Lawer was not disabled. (Tr. 13-26.)

Lawer was born in 1959 and was fifty-four years old on her disability onset date. (Tr. 186.) She has a high school education and has past relevant work experience as a head cashier. (Tr. 191.) Lawer alleged disability due to displacement of "cervical interv. disc neck arm back," cholesterol, high blood pressure, and acid reflux. (Tr. 190.)

In applying the five-step sequential process, the ALJ found that Lawer had not engaged in substantial gainful activity since her alleged onset date of August 28, 2013. The ALJ also determined that Lawer's degenerative disc disease, cervical spondylosis, status-post remote fusion, and unspecified hypersomnia were severe impairments. However, the ALJ found that Lawer did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Lawer retained the residual functional capacity to

> perform less than a full range of light work as defined in 20 CFR 404.1567(b). The claimant is capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She is capable of standing and/or walking about six hours of an 8-hour workday and she is capable of sitting about six hours of an 8-hour workday. The claimant is limited to frequent use of the bilateral upper extremities for pushing/pulling. She can never climb ladders/ropes/scaffolds, but she can occasionally climb ramps/stairs, stoop, kneel, crouch, or crawl and she can frequently balance. The claimant is capable of occasional bilateral overhead reaching, but she has an unlimited capacity to reach in all other directions. The claimant can perform frequent handling with her left hand with unlimited assistive use of her right dominant hand. She can perform frequent fingering with her left hand and unlimited

fingering with her right dominant hand. The claimant must avoid concentrated exposure to extreme heat and humidity. She must avoid even moderate exposure to workplace hazards such as unprotected heights or dangerous, moving machinery.

(Tr. 19.) The ALJ found that Lawer was capable of performing past relevant work as a head cashier, and that this work did not require the performance of work-related activities precluded by Lawer's residual functional capacity. Therefore, the ALJ found that Lawer was not disabled from the alleged onset date of August 28, 2013 through the date of the decision.

The Appeals Council denied Lawer's request for review on September 30, 2016, making the decision of the ALJ the final action of the Commissioner. (Tr. 4-6.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

PJG

**ISSUES**

Lawer raises the following issues for this judicial review:

I. The ALJ's finding that Ms. Lawer is capable of performing her "past relevant work as a head cashier" is not supported by substantial evidence as such work was, in fact, a "composite job" also entailing medium duties.

II. The ALJ's reasons for according "little" or "no" weight to the opinions of Ms. Lawer's treating physicians are not based on substantial evidence.

III. The ALJ reversibly erred by failing to properly assess Ms. Lawer's credibility.

(Pl.'s Br., ECF No. 13.)

**DISCUSSION**

As stated above, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. "Past relevant work" is defined by the regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1); see also 20 C.F.R. § 404.1574 (discussing substantial gainful activity). In determining whether a claimant can perform her past relevant work, the Commissioner "will ask [the claimant] for information about work you have done in the past" and "may also ask other people who know about your work" and "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence [she] need[s] to help [her] determine whether [a claimant] can do [her] past relevant work, given [her] residual functional capacity." 20 C.F.R. § 404.1560(b)(2). Further, Social Security Ruling 82-62 provides:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:



> 1. A finding of fact as to the individual's [residual functional capacity].
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's [residual functional capacity] would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4. A claimant is generally not disabled if she can return to her past relevant work as she performed it or as it is customarily performed throughout the economy. 20 C.F.R. § 404.1560(b)(2); SSR 82-61, 1982 WL 31387.

Although the ALJ relied on the vocational expert's classification of portions of Lawer's past relevant work, the court agrees based on persuasive case law that because the Dictionary of Occupational Titles ("DOT") classification selected by the vocational expert involved a sedentary exertional level when the plaintiff's clear description of her past relevant work was at the medium exertional level (which even the vocational expert acknowledged), the ALJ's determination to adopt that classification is unsupported. Here, the ALJ adopted the vocational expert's opinion that Lawer's past relevant work at was as a "[h]ead cashier, SVP 5, skilled, strength as generally performed sedentary, as she performed it, medium, DOT 211.362-010." (Tr. 61.) In response to the ALJ's hypothetical question containing the limitations identified in Lawer's residual functional capacity determination, the vocational expert stated that such a person could perform Lawer's past work "as generally performed" based on how the vocational expert has seen the job performed, explaining that overhead reaching is not addressed by the DOT. (Tr. 64-65.) The ALJ found that

Lawer was capable of performing her past relevant work as the job of head cashier as "it [i]s actually and generally performed" in the national economy.[3]

However, as pointed out by Lawer's attorney during the hearing, based on the evidence presented, Lawer did not participate in some of the essential functions of the job of head cashier and the majority of her job duties did not correspond with the job of head cashier. (Tr. 65-67.) The evidence of record includes Lawer's completion of Social Security Form SSA-3369. Lawer's responses to the questions on the form indicate the following exertional requirements for the job she held at Piggly Wiggly (grocery store) from November 1985 through October 2013: ringing and bagging groceries, retrieving shopping carts, handling cashiers' voids, checking in vendors, and "[a] lot of lifting heavy things, stocking shelves." (Tr. 200-01). Lawer also stated that her workday entailed: walking for 7 hours; standing for 8 hours; sitting for 15 minutes; stooping for 2-3 hours; kneeling for one hour; crouching for 2-3 hours; handling, grabbing, or grasping big objects for 8 hours; reaching for 2 hours; writing, typing, or handling small objects for 7½ hours a day; lifting "groceries as much as 25 pounds 6 feet every day" and frequently lifting up to 10 pounds. Lawer responded that she supervised four other people for one hour a day and was a lead worker (Head Cashier). (Id.) Lawer also stated that she "made display signs for the ads[,] took groceries to customers['] car[s][,] help them shop[,] and pick up order for businesses." (Tr. 207.) During the hearing, Lawer explained that her job duties as head cashier included: handling overrides on the

---

[3] Initially, there appear to be two errors in the ALJ's findings. First, contrary to the ALJ's statement that the vocational expert testified that claimant's past relevant work as head cashier is classified as light work according to the DOT, the vocational expert testified that it was classified as sedentary work. In fact, there was a lengthy examination by counsel on this issue, and the vocational expert maintained that it was classified as sedentary work. (Tr. 66-67.) Secondly, there was no testimony to support the ALJ's finding that Lawer could perform her past relevant work as she actually performed it. Perhaps these statements were typographical errors and, if so, they can be addressed on remand.

PJG

registers for the cashiers; making sure the cashiers "stay[ed] on their registers" (Tr. 42); running her own register (Tr. 70); lifting "the dog food bags of 25 to 30 pounds when I was there, the [t]urkeys, the beers, and all that -- things like that" (Tr. 60); stocking shelves; cleaning bathrooms; and lifting twenty-five pounds occasionally and ten pounds frequently (Tr. 60-61). Lawer also indicated that she did not hire and fire anyone, make the schedules, or give performance ratings. (Tr. 42.) Lawer agreed on further questioning and discussion with the vocational expert that her job "basically was a grocery checker."[4] (Tr. 70.)

Courts in this circuit have recognized that when a plaintiff's past relevant work does not properly fall within a DOT classification, either because the plaintiff performed a so-called "composite" job with duties crossing over various DOT classifications or because she did not perform the main duties of the DOT classified job identified by the vocational expert, then the ALJ should not consider whether a plaintiff can perform her past relevant work as it is generally performed in the national economy based on a DOT classification. See Shealy v. Colvin, Civil Action No. 8:13-2383-RMG, 2015 WL 467726, at *11-*13 (D.S.C. Feb. 4, 2015); Turrentine v. Colvin, C/A No. 1:15CV00256, 2016 WL 225699,*3-*5 (M.D.N.C. Jan. 19, 2016). Rather, some courts have suggested that an ALJ in such cases is limited to determining whether the claimant can perform her past relevant work as she performed it. See, e.g., Shealy, 2015 WL 467726, at *11-*13 (discussing "composite jobs" and concluding that substantial evidence did not support the ALJ's

---

[4] The court notes that the ALJ interrupted this discussion stating, "Uh-uh; no, no, no; look at this, 3E. We're not going to reinvent what you do, Ms. Lawer, okay?" (Tr. 70.) The ALJ then summarized 3E, which was Lawer's response to the questions on Social Security Form SSA-3369, as discussed above. The ALJ specifically observed that the form asked, "Were you a lead worker, yes, head cashier. We talked about that. I'm not going to reinvent a new position at this point. I'm not going to do that. I questioned her about her work. We've had that. I'm going to classify her as a head cashier. . . . Do your closing." (Tr. 71.)

PJG

finding that the plaintiff could return to work as an "order clerk" where her past relevant work actually appeared to be a composite job requiring the duties of order clerk, material handler, and/or store's laborer). This seems especially to be the case when the DOT classification used by the vocational expert is at a less strenuous exertional level than the actual job performed by the plaintiff as she describes it. See Turrentine, 2016 WL 225699 (finding that because, among other reasons, the plaintiff's past relevant work as she described it was at the light exertional level, including walking up to six hours per day and seldom sitting at a computer, whereas the DOT occupation used by the vocational expert and the ALJ qualified as sedentary, substantial evidence failed to support the ALJ's use of that DOT classification in analyzing the plaintiff's past relevant work); Shealy, 2015 WL 467726, at *13 (noting that in finding that the plaintiff could perform her past relevant work of order clerk, which is classified as sedentary, the ALJ appeared to have based his conclusion on the least demanding aspect of the plaintiff's actual job); see also DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (recognizing that the duties associated with job labels used by employers may not correspond to labels used by the DOT or other administrative categorization system and that a claimant may overcome the presumption that the Commissioner's generalization applies by demonstrating that her duties were not those envisaged by the framers of the Commissioner's category).

Here, in addition to the apparent misstatements in the ALJ's findings, the ALJ's reliance on the vocational expert's use of the DOT classification for "Head Cashier" does not appear to be supported by substantial evidence in light of Lawer's description of her actual job duties. See SSR 82-62, 1982 WL 31386, at *3 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."). In fact, the evidence reflects

Page 9 of 12

PJG

that Lawer did not perform many of the main duties of the DOT classified job identified by the vocational expert. In fact, although "[a] former job performed [] by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy," SSR 82-61, 1982 WL 31387, the problem in this case is that the evidence of record describing the duties Lawer performed in her past relevant work simply does not appear to correspond to the sedentary job identified by the vocational expert and ultimately accepted by the ALJ. See Cashier I, DOT # 211.362-010, 1991 WL 671835; see also DeLoatche, 715 F.2d at 151 (recognizing that the duties associated with job labels used by employers may not correspond to labels used by the DOT or other administrative categorization system and that a claimant may overcome the presumption that the Commissioner's generalization applies by demonstrating that her duties were not those envisaged by the framers of the Commissioner's category). Based on this evidence from Lawer, which the regulations require be treated as the "primary source" for vocational documentation, skill level, and exertional and nonexertional demands of the plaintiff's work, use of a sedentary DOT classification is unsupported.

In light of the court's recommendation that this matter be remanded for further consideration, the court need not address Lawer's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Lawer may present her remaining arguments concerning the ALJ's alleged errors on remand.

PJG

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 24, 2017
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).